**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CORWYN W. HATTER,<br><br>Plaintiff,<br><br>v.<br><br>WMATA,<br><br>Defendant. | Case No. 14-cv-1470 (TSC) |

**MEMORANDUM OPINION**

Plaintiff Corwyn Hatter brings this case under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, alleging that Defendant WMATA discriminated against him on the basis of his disability when it refused to hire him and refused to provide him with a reasonable accommodation. (*See* Am. Compl. ¶¶ 34–64 (ECF No. 5)). Defendant has moved for summary judgment. (ECF No. 18). For the reasons stated herein, Defendant's motion is DENIED.

## I. BACKGROUND

Plaintiff applied for a bus operator position with WMATA in December 2009. (Hatter Decl. ¶ 2 (Pl. Ex. 1)). In February 2010, Sonya Carr, a WMATA human resources employee, invited Plaintiff to proceed to the next stage of the application process by taking a written test. (*Id.* ¶¶ 3–4; Pl. Ex. 2 (E-Mail from S. Carr)). Following completion of this test, WMATA extended a conditional offer of employment to Plaintiff in March 2010. (Hatter Decl. ¶ 5; Pl. Ex. 3 (Letter from L. Lott)). Plaintiff was informed that he was required to undergo a medical examination prior to receiving a full employment offer, and he completed the examination three days after receiving the conditional offer. (Hatter Decl ¶¶ 5, 6). During this examination, Plaintiff was notified that his blood pressure was elevated and that a follow-up examination

would be required. (*Id.* ¶ 7). Following his follow-up examination in April 2010, Plaintiff was ordered to complete a separate evaluation for sleep apnea at his own expense within ten days. (*Id.* ¶¶ 8, 10). Plaintiff alleges that Carr informed him, once before his sleep apnea test and once after, that he would be disqualified from employment if he had any form of sleep apnea. (*Id.* ¶¶ 12, 15). He underwent the sleep apnea evaluation in early May 2010, and the results showed that he had moderate obstructive sleep apnea. (*Id.* ¶¶ 13–14). He took a second test in early June that showed improvement but still indicated that he had sleep apnea. (*Id.* ¶ 14).

Following Plaintiff's sleep apnea tests, he chose not to submit the test results to WMATA. (*Id.* ¶ 16). As a result of his failure to complete the medical certification process, Plaintiff was declared medically disqualified from the bus operator position, and was ultimately not hired. (Def. Ex. 8; Pervall Aff. ¶¶ 19–20 (Def. Ex. 3)). Plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Prince Georges County Human Relations Commission in October 2010. (*See* Pl. Exs. 8, 9). In July 2012, and again in May 2013, the EEOC concluded that it was more likely than not that WMATA had violated the ADA by requiring Plaintiff to undergo a sleep apnea test and for failing to hire him. (Pl. Ex. 10). Finally, in May 2014, Plaintiff was issued a Notice of Right to Sue letter by the EEOC, and he filed this suit in August 2014. (*Id.*). Following this court's denial of Defendant's motion to dismiss (ECF No. 10), the parties completed discovery and Defendant moved for summary judgment (ECF No. 18).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no disputed genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In determining whether a genuine issue of

material fact exists, the court must view all facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The movant must rely on materials in the record to demonstrate the absence of any genuinely disputed issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 332. The nonmoving party, in response, must present his own evidence beyond the pleadings to demonstrate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. A fact is material if "a dispute over it might affect the outcome of a suit," and an issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted). The non-movant is "required to provide evidence that would permit a reasonable jury to find" in his or her favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (citations omitted).

## III. DISCUSSION

Under the Rehabilitation Act of 1973, "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Claims brought under the Rehabilitation Act are analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McGill v. Muñoz*, 203 F.3d 843, 845 (D.C. Cir. 2000) (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc)). Under this framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). To establish a prima facie showing in this context, Plaintiff must

demonstrate that he had or was perceived to have a disability, he applied for an available position, he was "otherwise qualified," and his non-selection gives rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Chinchillo v. Powell*, 236 F. Supp. 2d 18, 23 (D.D.C. 2003) (stating *prima facie* elements under Rehabilitation Act claim).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employer's action. *Burdine*, 450 U.S. at 252–53. If the defendant meets this burden, then the burden reverts to the plaintiff to offer evidence raising a question of fact as to whether the employer's reason was merely a pretext for discrimination. *Id.* at 253. Here, the parties do not dispute that Plaintiff applied for employment with WMATA, that he had sleep apnea, or that WMATA perceived him to have sleep apnea, and they also do not dispute that sleep apnea is a disability under the Act. The court must therefore first determine whether Plaintiff was qualified for the position, and if so, whether he has offered sufficient evidence from which a reasonable jury could conclude that Defendant's explanation that it did not hire him due to his failure to complete the medical certification process was merely a pretext for discrimination against his disability.

Under the Rehabilitation Act, a qualified individual is a person who can "perform, 'with or without reasonable accommodation,' 'the essential functions of the employment position that such individual holds or desires.'" *Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014) (quoting 42 U.S.C. § 12111(8)); *see also* 29 C.F.R. § 1614.203(b) (applying standards under the Americans with Disabilities Act to claims under the Rehabilitation Act). Defendant argues that Plaintiff was not qualified under the Act because WMATA, and Department of Transportation regulations, required that bus operators complete a medical certification and he failed to do so. However, here Defendant overstates the "otherwise qualified" element of the prima facie

showing, which requires only that Plaintiff demonstrate he was able to perform "the essential functions of the employment position." The bus operator job posting, attached as an exhibit to Defendant's motion, contains a section helpfully labeled "Essential Functions," which clearly states that the essential functions of the bus operator position include operating a commercial passenger bus, conducting routine bus inspections, submitting accident and incident reports, communication with customers, et cetera. (Def. Ex. 9 at 1–2). Completion of a medical certification is not an "essential function" of the position. To the extent Defendant argues that the certification is a prerequisite for one of the listed functions, such as operating the passenger bus, Defendant has not presented any evidence that Plaintiff could not obtain this certification, and there is no evidence the Plaintiff could not operate a bus. Indeed, the only evidence in the record on this point strongly suggests that Plaintiff was able to perform these essential job functions, as he had previously worked as a commercial passenger bus driver, and, more significantly, WMATA actually extended to Plaintiff a conditional offer for the position. (Def. Ex. 2 at 4 (Hatter Dep.); Pl. Ex. 3 (Contingent Offer Letter)). Because there is no dispute of fact in the record as to whether Plaintiff could perform the essential job functions of the position, with or without a reasonable accommodation, the court concludes that Plaintiff has sufficiently established a prima facie case of discrimination.

The burden next shifts to Defendant to articulate a legitimate explanation for its decision not to hire Plaintiff. Defendant argues it declined to hire Plaintiff because he failed to complete the required medical certification process. Under the Rehabilitation Act, employers may assert as a defense that they used qualification standards that are "job-related and consistent with business necessity" in determining who to hire, 42 U.S.C. § 12113, and Defendant contends that its medical certification procedure is such a qualification standard. Moreover, under the U.S.

Department of Transportation's Federal Motor Carrier Safety Regulations, operators of commercial vehicles must obtain medical certification prior to operating such a vehicle, 49 C.F.R. § 391.41(b)(5), and Defendant asserts that Plaintiff's medical examination was part of the process of obtaining this certification. It is undisputed that Plaintiff began WMATA's medical certification process and underwent two physical exams but did not submit the medical results after a follow-up sleep apnea study. Defendant states that this failure to submit his results and complete the process is the reason Plaintiff was not hired.

Because Defendant has articulated a legitimate explanation for its decision, the burden shifts back to Plaintiff to offer evidence from which a reasonable jury could conclude that Defendant's explanation is merely pretext and that Defendant was actually motivated by discrimination against Plaintiff's disability. As evidence, Plaintiff submits his own sworn declaration in which he states that Sonya Carr, a WMATA human resources employee, told him that he "would be disqualified from the Bus Operator position if [his] test results showed that [he] had any form of sleep apnea," and again in a follow-up conversation stated that he would be disqualified if he was determined to have sleep apnea. (Hatt Decl. ¶¶ 12, 15 (Pl. Ex. 1)).

Though Defendant characterizes this declaration as "self-serving," it does not dispute that Carr made these statements to Plaintiff. Instead, Defendant submits the affidavit of Dr. Gina Pervall, a contractor occupational health physician with WMATA, who states that "[t]he WMATA Medical Services and Compliance Branch has final say on all applicants needing medical certification" and "an applicant is not automatically medically disqualified from employment" due to a sleep apnea diagnosis. (Pervall Aff. ¶¶ 14–15 (Def. Ex. 3)). It may be the case that this is WMATA's policy, but Dr. Pervall's declaration fails to rebut Plaintiff's declaration that Carr—a WMATA human resources employee—twice told him that a sleep

apnea diagnosis would disqualify him for the position. A reasonable jury could therefore determine that Defendant's stated explanation for not hiring Plaintiff—that he was not hired only because he failed to complete the certification process by submitting the medical results—was merely a pretext for discrimination against Plaintiff due to his disability.

The court further notes that Plaintiff's unrebutted evidence of the statements made by WMATA's human resources staff is especially troubling. In passing the Rehabilitation Act, Congress expressly wrote that "individuals with disabilities continually encounter various forms of discrimination in such critical areas as employment . . . [and] the goals of the Nation properly include the goal of providing individuals with disabilities with the tools necessary to . . . achieve equality of opportunity, full inclusion and integration in society, employment, independent living, and economic and social self-sufficiency, for such individuals." 29 U.S.C. § 701(a)(5), (6). Plaintiff alleges, and WMATA does not dispute, that WMATA's own human resources staff articulated to Plaintiff an explicitly discriminatory hiring practice for applicants with sleep apnea, and then, after he chose not to proceed with the process because he had been told repeatedly that he would be disqualified, Defendant now attempts to hide behind Plaintiff's failure to complete the process to assert he was not qualified and cannot establish a discrimination claim. Defendant, like any employer, cannot evade liability under federal civil rights laws in this way. Such a practice, if proven, would subvert the very purpose of our nation's civil rights protections, perpetuate the pervasive discrimination against individuals with disabilities that Congress expressly sought to remedy, and would lead to unacceptable results.

In sum, based on the record presented with the parties' filings, the court concludes that Plaintiff has established a prima facie showing of disability discrimination under the Rehabilitation Act and further concludes that there remains a question of fact as to whether

Defendant's offered explanation for its decision was merely pretext for discrimination. The court therefore DENIES Defendant's motion.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.

Date: March 27, 2017

Tanya S. Chutkan
TANYA S. CHUTKAN
United States District Judge